# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TODD KARL NAUGLE,** : | **CIVIL ACTION NO. 1:10-CV-2029** |
| Plaintiff : | (Judge Conner) |
| v. : | |
| **FRANKLIN COUNTY PRISON**, et al., : | |
| Defendants : | |

## MEMORANDUM

Todd Karl Naugle ("Naugle" or "plaintiff"), a Pennsylvania state inmate, who at all times relevant was incarcerated at the Franklin County Prison, Chambersburg, Pennsylvania, commenced this civil rights action on September 30, 2010, alleging that he received inadequate medical care for his diabetic condition while he was housed at the Franklin County Prison. Named as defendants are the following entities and individuals: Franklin County Prison ("FCP"); Prime Care Medical, Inc. ("Prime Care"); Lieutenant Settings ("Settings"); Warden Wetzel ("Wetzel"); Deputy Warden Weller ("Weller"); and Health Care Administrator K. Shay ("Shay").

Presently ripe for disposition are motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on behalf of FCP, Settings, Wetzel and Weller (Doc. 17) and Prime Care and Shay (Doc. 15). For the reasons set forth below, the motions will be granted.

**I.      Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U. S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8 requires more than "an unadorned, the-defendant unlawfully-harmed-me

accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

## II.     Allegations of the Complaint

Naugle alleges that on May 6, 2010, he was transported from the State Correctional Institution at Camp Hill (SCI-Camp Hill) to FCP. (Doc. 1, at 2, ¶ 1.) During his intake interview with the medical department he informed the nurse that he was a diabetic. (Id.) He reported that although he was not on a diabetic diet, he would need a snack bag in the evening to maintain his sugar levels during the night hours and into the morning. He also expressed concern about the regulation of his insulin because the meal portions at FCP were significantly smaller than those served at SCI-Camp Hill.

He states that he was immediately put on a diabetic diet, which included snack bags in the evening. He filed a few grievances and was eventually placed on a regular diet. His insulin levels were being checked twice daily and, based upon these levels, his snack bags were discontinued. (Id.) He alleges that he was "forced to purchase food" from the commissary to make up for the loss of the snack bags. (Id.) Because the addition of the commissary snacks did not resolve the low blood sugar levels he was experiencing in the morning, he filed several grievances.

3

Approximately fourteen days later, he was placed back on the diabetic diet and again received evening snack bags.

On June 8, 2010, he was cautioned about "refusing the sliding scale coverage," which included administration of fast acting insulin. (Id. at ¶ 2.) He indicates that he refused this coverage because the fast acting insulin caused a drop in his blood sugar level and put him at risk of drifting into a diabetic coma. (Id.)

On June 9, 2010, his sugar level was checked at 4:15 p.m. and the nurse advised him that he needed the sliding scale coverage. (Id. at 3, ¶ 3.) He told her that he was concerned that it would place him in a coma. He was transferred to the medical block for observation. The following day, while still under medical observation, Naugle's sugar level was checked at 4:15 a.m. and, because it was low, he was given a shot of insulin. (Id. at ¶ 4.) He alleges that he explained to the nurse that the insulin was inferior and did not work well for him. The next thing he remembers is waking up on the floor in the presence of defendants Settings and Shay. When asked what happened, Naugle responded that "you have been given [sic] me to [sic] much insulin and it caused me to go into a diabetic coma." (Id.)

He alleges that he was placed in a "smock" the following day and seen by a psychiatrist because "[he] quit eating and [his] sugar was low and [he] had the nurse give [him] a shot anyway. (Id. at ¶ 5.) He had a video conference with a psychiatrist and was then taken back to his cell. (Id.)

4

On July 5, 2010, he asked defendant Wetzel why he was placed in a smock. (Id. at ¶ 6.) Defendant Wetzel responded that he did not know, but that he would look into it. (Id.) On July 13, 2010, he was transported back to SCI-Camp Hill.

**III. Discussion**

    **A. Motions to Dismiss**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Also, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v.

5

Taylor, 316 F.3d 257 (3d Cir. 2003). Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08. Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode, *supra*. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

    1.    Defendant FCP

Because a prison or correctional facility is not a "person" within the meaning of § 1983, the complaint against FCP will be dismissed. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); Phippen v. Nish, 223 F. App'x. 191, 192 (3d Cir. 2007).

    2.    Defendant Wetzel

Naugle contends that Wetzel, in his capacity as the warden of the prison, was made aware that he was dissatisfied with the medical treatment he was receiving for his diabetic condition, but Wetzel failed to remedy the situation. However, he fails to allege that Wetzel played an affirmative part in the administration of his medical treatment. Rather, he seeks to hold him liable based upon his supervisory role as the warden of FCP. Significantly, a civil rights claim cannot be premised on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the

supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Simply making the warden aware of a medical issue is insufficient to impose liability. Moreover, a non-physician defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993.) Consequently, the claim against Wetzel will be dismissed.

       3.     Defendant Weller

Naugle states that defendant Weller was made aware of the difficulties he was experiencing through the filing of grievances and, despite his professional responsibility to ensure the safety of inmates at the prison, he failed to take action. However, participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. See Rode, 845 F.2d at 1208 (mere filing of a grievance is not enough to impute the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Croom v. Wagner, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance

is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement); Pressley v. Blaine, No. 01-2468, 2006 U.S. Dist. LEXIS 30151, at *17 (W.D. Pa. May 17, 2006) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern." (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983))).  Therefore, the claim against Weller is also subject to dismissal.

    4.  Defendants Settings and Shay

Plaintiff simply alleges that defendants Settings and Shay were standing over him when he awoke from his diabetic coma, which is insufficient to establish personal involvement in the underlying constitutional claim.  Moreover, as noted above, these non-physician defendants cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.  See Durmer, 991 F.2d at 69.

    5.  Prime Care

The claim against Prime Care is subject to dismissal.  Naugle fails to allege the existence of any policy or custom that deprived him of his constitutional rights. Liability cannot be based on *respondeat superior* liability alone.  It is well-settled that:

> A private health care provider acting under color of state law, . . . , can be liable under § 1983 for Eighth Amendment violations stemming from inadequate medical treatment of prisoners.  Such liability cannot rest on

> *respondeat superior* alone, however, but instead must be based on some policy, practice, or custom within the institution that caused the injury. Thus, to survive a motion for summary judgment, a plaintiff must present evidence of a policy, practice, or custom which caused or exacerbated a serious medical need and was instituted with deliberate indifference to the consequences.
>
> For the purposes of § 1983 analysis, a policy is made when a decision-maker with final authority to establish such a policy issues an official proclamation, policy or edict. A custom, on the other hand, "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." As a result, custom can be established' by "proof of knowledge and acquiescence." Under the Estelle test, deliberate indifference can be shown in the instant case if there is an established policy or custom that caused [the prison health care provider] to intentionally deny or delay access to necessary medical treatment for non-medical reasons, or if officials intentionally interfered with a course of treatment once prescribed.

Johnson v. Stempler, No. 00-711, 2007 WL 984454, at *4 (E.D. Pa. Mar. 27, 2007) (internal citations omitted). Naugle makes no such allegations and seeks to sue Prime Care solely as the entity responsible for providing health care. Therefore, the deliberate indifference to medical care claim against Prime Care must be dismissed for failure to state a claim for which relief may be granted. See Riddick v. Modeny, 250 F. App'x. 482, 483-84 (3d Cir.2007) (affirming district court's granting of private health care provider's motion to dismiss under Rule 12(b)(6), where court found "absent any allegation from which the court could infer Prison Health Services's direct involvement in the alleged deprivation of his constitutional rights, it was not liable on a theory of *respondeat superior*." ).

**B.     Leave to Amend**

As noted above, a complaint should not be dismissed for failure to state a claim if it contains enough factual matter, taken as true, to suggest the required element. "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

Courts are cautioned that because of this liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). However, leave to amend under Rule 15 may be denied in cases of (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. See Foman, 371 U.S. at 182; see also Arthur v. Maersk, Inc., 434 F.3d 196, 204-05 (3d Cir. 2006) (stating that "leave to amend must generally be granted unless equitable considerations render it otherwise unjust"); see also Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (stating "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously

allowed or futility of amendment") (citations and internal quotation marks omitted); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (summarizing factors to consider under Rule 15).

In the matter *sub judice*, even accepting as true all factual allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and viewing them in a light most favorable to the plaintiff, it is clear that this is an instance in which a prisoner is dissatisfied with his medical care and that allowing amendment of the complaint to include allegations of personal involvement would be futile.

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer, 991 F.2d at 67. There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002). In this context, deliberate indifference has been defined as more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of

reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Corr. Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987). A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference, and "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Naugle's allegations reveal that during his short two-month incarceration at FCP his diabetic condition was closely monitored. During his initial medical intake interview, Naugle reported being diabetic and requested that he be given snack bags in the evening to maintain his blood sugar level. He was placed on a special diabetic diet which included an evening snack. After voicing displeasure with the diabetic diet, he was placed on a regular diet and the snack bags were discontinued.

He complained about not receiving snack bags so he was placed back on the diabetic diet.

He alleges that his blood sugar level was tested twice daily and he was being administered insulin when necessary. Although he was offered "sliding care coverage" for administration of fast acting insulin, he refused the coverage.

When he expressed concern over possibly having a reaction to the insulin, he was transferred to the medical department. The following day, while he was under the observation of the medical department, his blood sugar level was checked and it was determined that he needed insulin. He alleges that the nurse administered insulin that was inferior and caused him to go into a diabetic coma.

At no time was Naugle deprived of medical care. At most, the nurse's administration of inferior insulin would be a mistake that could possibly rise to the level of medical malpractice. As noted above, this court will not second-guess the propriety or adequacy of a particular course of treatment as it is a question of sound medical and professional judgment. Therefore, affording him the opportunity to amend would be futile because this is a matter of plaintiff being dissatisfied with the course of treatment received rather than being denied treatment.

**IV.** **Conclusion**

    Based on the foregoing, defendants' motions to dismiss (Docs. 15, 17) will be granted and the complaint will be dismissed in its entirety.  An appropriate order will issue.

                                            S/ Christopher C. Conner  
                                            CHRISTOPHER C. CONNER  
                                            United States District Judge

Dated:       July 29, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TODD KARL NAUGLE,** | : | **CIVIL ACTION NO. 1:10-CV-2029** |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **FRANKLIN COUNTY PRISON, et al.,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 29th day of July, 2011, upon consideration of defendants' motions to dismiss (Docs. 15, 17), it is hereby ORDERED that:

1. The motions (Docs. 15, 17) are GRANTED and plaintiff's complaint is DISMISSED in its entirety.

2. The Clerk of Court is directed to CLOSE this case.

3. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge